897 A.2d 442 (2006)
385 N.J. Super. 440
In the Matter of Dionisio R. ARENAS.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2006.
Decided May 18, 2006.
Barry H. Evenchick, Roseland, argued the cause for appellant (Walder, Hayden & Brogan, attorneys; Mr. Evenchick, on the brief).
Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Mr. Josephson, on the brief.).
Before Judges KESTIN[1], LEFELT and R.B. COLEMAN.
The opinion of this court was delivered by
*443 R.B. COLEMAN, J.A.D.
Appellant, Dionisio Arenas, a convicted sex offender currently incarcerated at the Adult Diagnostic and Treatment Center (ADTC) in Avenel, New Jersey, appeals from a Final Agency Decision of the Department of Corrections (DOC) denying his application for an international transfer to Spain, pursuant to N.J.S.A. 30:7D-1 and N.J.A.C. 10A:10-6.1, et seq. Arenas is a pedophile and a sexual predator of pre-pubescent boys and adult males. On April 8, 1988, Arenas was convicted of two counts of first degree aggravated sexual assault, N.J.S.A. 2C:14-2a; five counts of second degree sexual assault, N.J.S.A. 2C:14-2c; and three counts of fourth degree criminal sexual contact, N.J.S.A. 2C:14-3b. On October 21, 1988, Arenas was sentenced to an aggregate term of forty years, with a twenty-year mandatory minimum period of parole ineligibility. At the time of sentencing, the judge made the following observations:
[Arenas] appeals to a certain type of victim; the confused male [youngster], the kid looking for a man's support and friendship and love. He lures them with guilt and fear. He destroys them with sexual perversity. He covers his tracks with embarrassment and shame. He then goes on with his dastardly scheme.
He cannot be deterred. Fear of apprehension is not present. Concern for the victims is of no moment.
He has learned his skills well. . . . There is nothing that this Court can do to save the victims in this case. There is nothing the Court can do to eliminate male youngsters such as these from being attracted to a person such as this defendant, but the Court is in a position to prevent other youngsters from being his victims.
. . . .
This defendant is basically beyond rehabilitation or redemption. . . . He should be removed from the public for as long as the law allows. He is and shall always be a clear and present danger to every male youngster he comes in contact with or that he can find.
The maximum period of incarceration permitted by law is necessary coupled with the maximum period of parole ineligibility allowable.
During his incarceration, Arenas was offered sex offender treatment, however, he continually refused to participate in such treatment.
On November 8, 2002, Arenas, who is a Spanish citizen, initiated an application for an international transfer, pursuant to N.J.S.A. 30:7D-1 and N.J.A.C. 10A:10-6.1, et seq., whereby he sought a transfer to Spain to serve out the remainder of his sentence. Arenas's request to be transferred was opposed by the Office of the Prosecutor of Morris County, the Morris Township Police Department, and the Office of the Attorney General.
On August 12, 2003, the Commissioner of the DOC denied Arenas's application for a transfer. On that same date, the Administrator at ADTC informed Arenas of the Commissioner's decision to deny the transfer request until (1) the mandatory minimum term of incarceration is satisfied and (2) there is evidence that Arenas would receive sex offender specific treatment if transferred to Spain. On September 18, 2003, counsel for Arenas wrote to the Commissioner suggesting that the proper criteria appeared not to have been considered and that the Commissioner's decision must have been based on inaccurate information. By letter dated October 14, 2003, the Commissioner responded that he had denied the request in accordance with the Administrative Code and his review of the record and that he would not *444 reconsider his decision until Arenas satisfies the two conditions communicated on August 12, 2003. On November 6, 2003, the Commissioner wrote again to counsel for Arenas to advise that he could consider the denial of the request for a transfer to be a final agency decision.
Arenas now appeals arguing that the Commissioner either ignored the eligibility requirements for a transfer or made factually erroneous conclusions as to the eligibility requirements. In the alternative, he contends an evidentiary hearing is necessary. After careful review of Arenas's arguments and the regulations governing the transfer of prisoners to a foreign country, we affirm the final agency decision.
"It is settled that `[a]n administrative agency's interpretation of statutes and regulations within its implementing and enforcing responsibility is ordinarily entitled to our deference.'" Wnuck v. New Jersey Div. of Motor Vehicles, 337 N.J.Super. 52, 56, 766 A.2d 312 (App.Div. 2001) (alteration in original) (quoting In re Appeal by Progressive Cas. Ins. Co., 307 N.J.Super. 93, 102, 704 A.2d 562 (App.Div. 1997)). "Absent arbitrary, unreasonable or capricious action, the agency's determination must be affirmed." Ibid. (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175, 729 A.2d 1 (1999)). The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the person challenging the administrative action. McGowan v. New Jersey State Parole Bd., 347 N.J.Super. 544, 563, 790 A.2d 974 (App.Div.2002); Barone v. Dep't Human Servs., Div. of Med. Assistance and Health Servs., 210 N.J.Super. 276, 285, 509 A.2d 786 (App.Div.1986), aff'd, 107 N.J. 355, 526 A.2d 1055 (1987).
N.J.S.A. 30:7D-1 permits the Governor to authorize the Commissioner of the DOC to approve an exchange or transfer of foreign prisoners. The statute provides that:
If a treaty in effect between the United States and a foreign country provides for the exchange or transfer of the citizens of that foreign country who are juveniles adjudicated delinquent or persons convicted of criminal offenses pursuant to the laws of this State, the Governor may authorize the Commissioner of the Department of Corrections to approve an exchange or transfer pursuant to the terms of a treaty. The Governor may also authorize the commissioner to take any other action which is necessary for the participation of this State in such exchanges or transfers.
In reporting favorably Senate Bill No. 2229, which became N.J.S.A. 30:7D-1, the Senate's Health and Welfare Committee noted that "[c]urrently in New Jersey, if. . . an adult convicted of a criminal offense in this State is a citizen of a foreign country, that . . . adult is required to serve his sentence in this State." See N.J.S.A. 30:7D-1 (providing the Committee Statement). The new law which became effective November 6, 1986, offered an alternative. That alternative was rooted in practicality. It was not a mandate to transfer every foreign national convicted of a crime in this State. Rather, it was a recognition that "[t]he practice of prisoner transfers should contribute to the easing of overcrowded conditions in the State prisons and . . . [t]he transfer may also increase the rehabilitation of the person[.]" Ibid.
After the Commissioner receives an inmate's request for transfer, N.J.A.C. 10A:10-6.7 sets forth the procedures that are to be followed:
(a) The Commissioner, Department of Corrections, shall review the inmate's international transfer application and materials to determine the approval or *445 disapproval of the application. If the application is approved, the application and materials shall be forwarded to the Office of the Governor for authorization to transfer.

(b) The Office of Interstate Services shall notify the offices of the Attorney General, the State Police, and the sentencing court judge(s) and prosecutor(s) of the decision of the Governor relative to authorization of an inmate's application for international transfer.
(c) Applications which are not approved by the Commissioner will be returned to the Office of Interstate Services with a copy to the sending correctional facility and the inmate shall be notified by the Administrator or designee. The Office of Interstate Services shall notify the offices of the Attorney General, the State Police, and the sentencing court judge(s) and prosecutor(s) of the decision of the Commissioner to disapprove an application for interstate transfer.
(d) A decision to disapprove an application for international transfer may be appealed to the Commissioner. The appeal shall be filed in writing within 45 calendar days of the inmate's receipt of the Commissioner's decision.
(e) An appeal filed by the inmate shall be submitted in writing within 45 calendar days of the inmate's receipt of the Commissioner's application decision.
(f) The Commissioner shall consider the appeal filed pursuant to this section, and provide the inmate with the final decision of the Department of Corrections, in writing, within 45 calendar days of the receipt of the appeal.
[(Emphasis added).]
The State concedes that Arenas meets the preliminary eligibility criteria to be considered for an international transfer under N.J.A.C. 10A:10-6.7. The State asserts, however, that the Commissioner has considerable discretion to approve or deny that request even though all the eligibility requirements have been met. N.J.A.C. 10A:10-6.3.[2]
The Commissioner reviewed the application and disapproved Arenas's request for two reasons: (1) Arenas had not finished serving his twenty-year mandatory minimum term, which will not be satisfied until August 14, 2008; and (2) because Arenas was not going to receive sex offender treatment in Spain. Additionally, the Commissioner took into account objections to Arenas's transfer submitted by the Office of the Prosecutor of Morris County, the Morris Township Police Department, and the Office of the Attorney General, pursuant to N.J.A.C. 10A:10-6.6(a)(5). All three law enforcement offices expressed specific concerns about the sexual nature of Arenas's crimes and the likelihood that, without sex offender specific treatment, he *446 would continue to victimize young boys and be a threat to public safety.
The Commissioner determined, contrary to Arenas's argument, that the satisfaction of the preliminary criteria in N.J.A.C. 10A:10-6.3 did not automatically require his application be forwarded to the Governor. The Commissioner observed that the regulation merely states that the offender will be considered for an international transfer if he meets all of the preliminary criteria. The Commissioner concluded the plain meaning of the regulation requires that an application for transfer be forwarded to the Governor's office only when, after review, the Commissioner approves the application. The Commissioner's interpretation was not arbitrary, unreasonable or capricious. Indeed, it is consistent with the general rules of statutory construction and the legislative policies behind the enactment of N.J.S.A. 30:7D-1.
We agree that N.J.A.C. 10A:10-6.7(a) bestows upon the Commissioner considerable discretion to approve or deny a request for an international transfer. We find that the denial of Arenas's transfer request was based on legitimate punitive interests and rational concerns related to public safety. The mandatory minimum part of Arenas's sentence has not been satisfied. Moreover, Arenas has consistently refused any sex offender treatment, and there is no indication whether or not he would receive rehabilitation in Spain since he has presented no proof the Spanish correctional facility would provide sex offender treatment. In light of the heinous nature of Arenas's crimes, such a result would be irresponsible. "[R]ehabilitative procedures are for the benefit not only of the defendant, but also of society.. . . The victims of sex offenses are often the most precious and vulnerable members of society, children." State v. Howard, 110 N.J. 113, 130, 539 A.2d 1203 (1988). Therefore, we have long observed that "the State interest in rehabilitation of a convicted sex offender is substantial." Ibid.
We are satisfied there was substantial credible evidence to support the Commissioner's denial, which was neither arbitrary nor capricious. An evidentiary hearing is not required and is not necessary since we find the reasons for the denial of Arenas's application and the record supporting those reasons are clear and not the subject of any factual dispute.
Affirmed.
NOTES
[1] Judge Kestin did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. R. 2:13-2(b).
[2] N.J.A.C. 10A:10-6.3 governing an inmate's eligibility for international transfer states that: (a) Offenders must meet all of the following criteria before they may be considered for an international transfer: 1. The offender must be a citizen of the receiving state; 2. The offender must consent to transfer to the receiving state; 3. The offense of the offender must constitute a criminal offense under the laws of the receiving state; 4. The offender shall not have, at the time of the application, less than twelve months remaining on the sentence; 5. The offender shall not be under a sentence of death; 6. The offender shall not have collateral attacks or appeals on the sentence and/or conviction pending; 7. All other provisions of the imposed sentence such as fines, restitution and penalties shall be paid in full; 8. The offender shall not have detainers, wanted notices based on criminal convictions, indictments, informations, complaints and/or parole or probation violation allegations pending; and 9. The offender must meet all of the eligibility requirements of the treaty with the receiving state.