**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2854-17T1

LYNN D. WESLEY,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES OF
THE PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Submitted February 13, 2019 – Decided March 19, 2019

Before Judges Fuentes and Vernoia.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of Treasury, PERS No. #2-1229384.

William B. Hildebrand, attorney for appellant.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher R. Meyer, Deputy Attorney General, on the brief).

PER CURIAM

Lynn D. Wesley, a Family Services Specialist employed by the New Jersey Division of Youth and Family Services,[1] appeals from the final agency decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS) denying her application for accidental disability retirement benefits. Because our standard of review requires deference to an agency's findings of fact, credibility determinations and expertise, we affirm.

I.

In January 2012, Wesley filed an application for accidental disability retirement benefits, claiming a permanent disability resulting from two automobile accidents: a September 28, 2009 accident that did not occur during the performance of her job duties and a September 14, 2010 accident that did occur during the performance of her job duties. In an August 8, 2012 letter, the Board denied Wesley's application, finding "there is no evidence" Wesley suffered a "total and permanent disability" as a result of the September 14, 2010

---

[1] During the period relevant to Wesley's application for accidental disability benefits, she was employed by the Division of Youth and Family Services (DYFS). Effective June 29, 2012, DYFS was renamed the New Jersey Division of Child Protection and Permanency. L. 2012, c. 16.

A-2854-17T1

work-related accident, and referred the matter to the Office of Administrative Law as a contested case.

At the subsequent hearing before an Administrative Law Judge (ALJ),[2] the evidence showed that on September 28, 2009, Wesley was injured in an automobile accident that occurred while she was not working. Following the accident, a November 5, 2009 MRI showed Wesley suffered from central disc herniation at C3-4 and C5-6, a right paracentral disc herniation at C6-7, two bulging discs in the lumbar spine, and a small herniation at L5-S1.

Wesley treated with multiple doctors for neck and back pain, including Chiropractor Adam J. Benn, who testified at the hearing before the ALJ and was qualified as an expert in chiropractic medicine. Wesley returned to work in April 2010. Chiropractor Benn discharged Wesley from his care in August 2010.

On September 14, 2010, Wesley was involved in a second automobile accident during the performance of her job duties. An ambulance transported Wesley to the hospital, where she reported a "mild headache and lightheadedness" and "neck pain and low back pain." The hospital evaluated

---

[2] The hearing took place over two days. Due to the retirement of the ALJ who conducted the first day of the hearing, a second judge completed the hearing and rendered a decision.

Wesley, prescribed pain medication, and discharged her with instructions to follow up with her family doctor.  Wesley never returned to work following the 2010 automobile accident.

On September 29, 2010, two weeks after Wesley's second accident, Chiropractor Benn prepared a report stating Wesley suffered "a permanent loss of bodily function" from injuries that "are directly and causally related to the trauma sustained in the patient's [2009] accident."  The report makes no mention of the September 14, 2010 accident and does not attribute Wesley's alleged permanent loss of bodily function, or any other alleged injuries, to that accident.

A month after the second accident, Wesley underwent an MRI of the cervical and lumbar spine.  In his report, Dr. John P. Nolan, D.O., explained the MRI demonstrated "no change compared with [the] previous study dated [November 5, 2009]," which followed Wesley's first accident.  Specifically, the MRI of the cervical spine showed "a central disc herniation at C3-C4 unchanged from the previous study," "a central disc herniation at C5-C6 and disc herniation on the right at C6-C7," also "unchanged."  The MRI of the lumbar spine showed an annular bulge at L1-2 and L3-4 and a small disc herniation on the left at L5-S1—that is, "[n]o change compared with the previous examination" following the 2009 automobile accident.

A-2854-17T1

Dr. Brahman Levy, M.D. did not testify at the hearing, but his medical records reveal that he examined Wesley on October 20, 2010. His records further revealed that a radiologist compared the results from the 2009 MRI tests following Wesley's first accident with the 2010 MRI test results following the second accident and found the latter results "demonstrate no significant changes, no new herniations, etc." from the former. Dr. Levy described Wesley as a "chronic pain patient who has had problems in the past" and found the "current situation represents an exacerbation of this." Dr. Levy stated he was "going to release the patient to return to work at modified duty capacity."

Dr. Nolan was not called as a witness at the hearing, but his medical records were admitted in evidence. He ordered the discontinuance of Wesley's physical therapy in January 2011 based on her reports of increased pain during therapy and a lack of improvement in her condition. Dr. Nolan prescribed pain medication and referred Wesley for a pain management evaluation in February 2011, and opined that Wesley could not return "to her job of operating a motor vehicle during work tasks" due to "the degree of limited motion in the cervical spine."

Wesley also treated with Dr. Jeffrey Polcer, a pain management specialist. Dr. Polcer did not testify at the hearing, but his medical records showed he gave

Wesley cervical steroid and lumbar epidural steroid injections during March through May 2011.

In late December 2011, Wesley also returned to Chiropractor Benn, who provided heat treatments and pain medication prescriptions. At trial, Chiropractor Benn testified Wesley was permanently disabled from performing her job duties as a result of the 2010 work-related accident.

Wesley also testified at the hearing, explaining she suffered from back and neck pain, numbness in her left hand and had limited range of motion that prevented her from performing functions, such as driving, prolonged sitting and standing and computer work, necessary for the completion of her job duties. Wesley's daughter testified concerning Wesley's ability to perform different daily tasks following the two accidents.

Wesley also presented evidence that on August 22, 2011, she filed a claim for Social Security Disability (SSD) insurance benefits based on an inability to work. Wesley was awarded SSD benefits based on a finding she was disabled under "sections 216(i) and 223(d) of the Social Security Act"[3] "from September 14, 2010, [the date of the second accident,] through the date of [the] decision," March 8, 2013.

---

[3] 42 U.S.C. §§ 416(i) and 423(d).

6

PERS called Dr. Arnold T. Berman, a board-certified orthopedic surgeon, as its witness. Dr. Berman reviewed Wesley's medical records, examined her and found she did not suffer from a total and permanent disability. Dr. Berman testified Wesley had full range of active motion in her cervical spine, had "mild pain" on range of motion but no tenderness or spasm indicating radiculopathy, exhibited normal reflexes, and he determined there was no evidence of radiculopathy. Dr. Berman found Wesley's muscles and reflexes were normal, with no indication of atrophy and no objective findings of abnormality. He explained that his examination was "essentially normal" for a woman of Wesley's age. He examined Wesley's cervical and thoracolumbar spine and found the results, sensation, and reflexes were normal, as was her strength testing, heel to toe walking and straight leg raising.

Dr. Berman further noted the 2010 MRI report showed the identical degenerative changes in Wesley's spine reflected in the November 5, 2009 MRI report. Dr. Berman found Wesley suffered from no loss of bodily function and only minor subjective findings of pain on range of motion testing, and disagreed with Chiropractor Benn's conclusion to the contrary. Dr. Berman found Wesley was "fully recovered with no residuals" and "can participate in all activities of

daily living," including "her regular employment," pursuant to the results of objective tests and "objective findings."[4]

In a detailed and comprehensive written decision, the ALJ summarized the evidence presented by the parties and concluded that Dr. Berman's finding Wesley is not totally and permanently disabled was more credible than Chiropractor Benn's contrary opinion. The ALJ rejected Wesley's reliance on the SSD determination, finding it was irrelevant to Wesley's entitlement to accidental disability benefits, and concluded that Dr. Berman, who is a medical doctor, provided "the most convincing evidence" concerning Wesley's claimed disabilities based on Dr. Berman's "years of experience and substantial qualifications." The judge further found that Wesley's "application for accidental disability [retirement] benefits was made on the basis of an orthopedic disability" and there was an "absence of objective findings" supporting that claim. The ALJ found "the greater weight of the credible evidence is that [Wesley] is not permanently and totally disabled as the result of

---

[4]  Dr. Berman also testified that even if Wesley has "a total and permanent disability, it is not directly caused by the [2010] accident." Because we conclude there was sufficient credible evidence supporting the Board's finding Wesley is not totally and permanently disabled, it is unnecessary to address the Board's reliance, in the alternative, on Dr. Berman's testimony that if Wesley has a total and permanent disability, it was not caused by the 2010 work-related accident.

orthopedic conditions" and recommended affirmance of PERS's denial of Wesley's application for accidental disability retirement benefits.

The Board subsequently adopted the ALJ's findings and recommendation and issued a final decision denying Wesley's application for accidental disability retirement benefits. This appeal followed.

II.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). A reviewing court will presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). Thus, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion . . . but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). A reviewing court "may not vacate an agency determination because of doubts as to its wisdom or because the record may support more than one result." In re N.J. Pinelands Comm'n Resolution PC4-00-89, 356 N.J. Super. 363, 372 (App. Div. 2003). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980). Moreover, "[a]s a general rule, [we] should give 'due regard to the opportunity of the one who heard the witnesses to judge . . . their credibility . . . and . . . [give] due regard also to the agency's expertise where such expertise is a pertinent factor.'" Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (fourth through sixth alterations in original) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

PERS provides for both ordinary, N.J.S.A. 43:15A-42, and accidental, N.J.S.A. 43:15A-43, disability benefits. "[A]n accidental disability retirement

entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 43 (2008). A claimant seeking accidental disability retirement benefits must prove: (1) "[he or she] is permanently and totally disabled"; (2) "as a direct result of a traumatic event"; (3) "occurring during and as a result of the performance of his [or her] regular or assigned duties." N.J.S.A. 43:15A-43; see also Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 212-13 (2007). The applicant bears the burden of proof on each prong of the standard to establish an entitlement to accidental disability retirement benefits. Richardson, 192 N.J. at 212-13.

Here, the Board determined Wesley is not entitled to disability retirement benefits because she failed to establish she is permanently and totally disabled. Wesley argues the Board erred because the evidence, including Chiropractor Benn's testimony, established that she suffered from a permanent and total disability. We find Wesley's argument is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

We write further only to observe that our standard of review requires deference to an agency's factual findings when supported by substantial credible evidence. In re Young, 202 N.J. 50, 70-71 (2010). We have carefully reviewed

11

the record and are convinced the Board's finding that Wesley is not totally and permanently disabled is supported by sufficient evidence the Board found credible. The Board was not required to accept a determination that Wesley was entitled to SSD benefits as dispositive of her entitlement to accidental disability retirement benefits. Villanueva v. Zimmer, 431 N.J. Super. 301, 316-18 (App. Div. 2013). In addition, faced with the conflicting opinions of Chiropractor Benn and Dr. Berman concerning the nature and extent of Wesley's claimed injuries, the ALJ and Board found Dr. Berman's testimony that Wesley did not suffer from a total and permanent disability more credible and persuasive. Lacking credible evidence Wesley has a permanent and total disability, the Board correctly determined Wesley failed to sustain her burden of demonstrating an entitlement to accidental disability retirement benefits.[5] See Richardson, 192 N.J. at 212.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[5] As noted, because we are satisfied there is substantial credible evidence supporting the Board's determination Wesley is not permanently and totally disabled, it is unnecessary to address Wesley's argument that the Board erred by finding that even if she has a permanent and total disability, it was not caused by the 2010 work-related accident.

A-2854-17T1